IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARINA V. KARAKOZOVA, PH.D., | : | CIVIL ACTION |
| | : | NO. 09-02564 |
| v. | : | |
| | : | |
| THE TRUSTEES OF THE UNIVERSITY | : | |
| OF PENNSYLVANIA | : | |
| | : | |

O'NEILL, J.                                                                                                        May 9, 2011

## MEMORANDUM

On July 20, 2009, plaintiff Marina V. Karakozova, Ph.D., appearing pro se, filed a complaint against defendant the Trustees of the University of Pennsylvania, her former employer, alleging: (1) harassment on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981 and 42 U.S.C. § 1983; (2) disparate treatment on the basis of national origin in violation of Title VII, section 1981 and section 1983; and (3) retaliation. Now before me is defendant's motion for summary judgment. Plaintiff has not filed a response to defendant's motion.[1] For the reasons that follow, I will grant defendant's motion.

## BACKGROUND

**I.     Facts**

On October 1, 2004, plaintiff began a one-year appointment as a Postdoctoral Researcher under the supervision of Dr. Anna Kashina, an Associate Professor in the Department of Animal Biology at the University of Pennsylvania's School of Veterinary Medicine. See Def's. Mot. Ex.

---

[1] Despite plaintiff's failure to file a response to defendant's motion for summary judgment, I must consider the merits of the motion rather than grant it as uncontested. See Local R. Civ. P. 7.1(c).

B1 to Ex. 1; Ex. 2 at ¶¶ 2-3. Both plaintiff and Dr. Kashina are of Russian national origin, are originally from Russia, would often converse in Russian and exchanged email communication in Russian. Id. Ex. 1 at ¶7; Ex. 2 at ¶¶ 5, 34, 35, 37. On September 30, 2005, plaintiff's appointment to Dr. Kashina's laboratory was renewed for an additional year. Id. Ex. B2 to Ex. 1; Ex. 2 at ¶ 4. On August 7, 2006, Dr. Kashina sent a letter to plaintiff offering to renew her appointment for a third year effective October 1, 2006. Id. Ex. B3 to Ex. 1; Ex. 2 at ¶¶ 8-9.

As a Postdoctoral Researcher, plaintiff was subject to the Policy for Postdoctoral Trainees at the University of Pennsylvania. The Policy set forth plaintiff's obligations as including:

> (i) the conscientious discharge of [her] research, scholarly, and teaching responsibilities, as applicable; (ii) conformity with ethical standards in research and scholarship; (iii) compliance with good scholarly practice including the maintenance of adequate research records; (iv) observation of appropriate guidelines regarding human subjects and due observation of University standards regarding use of isotopes, chemicals, infectious agents, animals, and the like, if applicable; (v) open and timely discussion with [her] mentor regarding possession or distribution of tangible property such as materials, reagents and the like; (vi) discussion of laboratory records or scholarly materials, if relevant; (vii) prior disclosure of appropriate scholarly information, findings or techniques proposed for dissemination privately, at scholarly meetings, or in publications; (viii) collegial conduct toward all members of the University community; (ix) compliance with all applicable university policies.

Id. Ex. A to Ex. 2. After plaintiff received the August 7, 2006 reappointment letter, it became apparent to Dr. Kashina that plaintiff was no longer complying with her obligations under the Policy.

In particular, plaintiff's work in Dr. Kashina's laboratory required the use of "constructs," pieces of recombinant DNA from which plaintiff was to grow chimeric proteins in cells for

analysis and use in the lab. Id. Ex. 2, ¶ 11. Plaintiff was required to make her constructs available to the lab, her colleagues and, as a condition of the grant under which her appointment was funded, to other researchers after the publication of her research. Id. Ex. 2, ¶¶ 13-14; Ex. A to Ex. 2 at 3. Dr. Kashina asserts that it is the practice and policy in her lab that constructs be made available to others in a common lab box. Id. Ex. 2, ¶ 15. Despite her obligation to share her constructs, plaintiff either failed to place her constructs in the common lab box, misidentified her constructs, or supplied water instead of viable constructs. Id. Ex. 2, ¶¶ 16, 24, 26.

Concerned about plaintiff's performance, on September 11, 2006, Dr. Kashina had a telephone conversation with and subsequently sent an email to Mary Ann Timmins, the Administrative Director of Biomedical Postdoctoral Programs, seeking advice as to how to address plaintiff's performance issues. Id. Ex. C to Ex. 2. Dr. Kashina's proposed email to plaintiff outlined conversations that Dr. Kashina had previously had with plaintiff regarding her concerns about plaintiff's failure to make her constructs available in the common lab box. Id.

Also on September 11, plaintiff was out sick from the lab, requiring Dr. Kashina to find plaintiff's constructs on her own. Id. Ex. 2, ¶¶ 17-18. Dr. Kashina discovered that plaintiff's constructs were not in the common lab box. Id. Ex. 2, ¶ 20. At 10:07 a.m. on September 12, Dr. Kashina emailed plaintiff (who was still out sick) to inform her that Dr. Kashina had been unable to obtain DNA or grow proteins from a construct that plaintiff had made available to her. Id. Ex. D to Ex. 2; Ex. 2, ¶ 23. She asked plaintiff for guidance as to where she could find the stocks and colonies plaintiff had used to make the construct. Id. Ex. D to Ex. 2. Having received an untranslated Russian email response from plaintiff at 11:03 a.m., at 11:11 a.m., Dr. Kashina emailed plaintiff again, asking for information about whether plaintiff had "some bacterial stock

or construct saved somewhere" and asking about the location of plaintiff's lab notes. Id. Ex. E to Ex. 2. Dr. Kashina found that she had been unable to grow proteins from the construct to which plaintiff had directed her because it was actually water, and not a construct. Id. Ex. 2, ¶ 24. Plaintiff told Dr. Kashina that she had thrown away a construct that should have been made available to the lab. Id. Ex. 2, ¶ 26.

The Policy provides that "Mentors may terminate a [Postdoctoral Researcher] *during an appointment* for any reason on three months' written notice." Id. Ex. A to Ex. 2 (emphasis in original). Given plaintiff's conduct, Dr. Kashina felt that she had no choice but to terminate plaintiff's appointment. Id. Ex. 2, ¶¶ 28, 37. On September 13, 2006, Dr. Kashina sent plaintiff an email suspending her with pay until further notice. Id. Ex. 2, ¶ 29; Ex. F to Ex. 2. On September 18, 2006, Dr. Kashina sent plaintiff a letter informing plaintiff that her appointment would be terminated effective December 18, 2006 for her failure to meet the obligations of her position, including failures to fulfil six of nine obligations listed in the Policy.[2] Id., Ex. C to Ex. 1.

Plaintiff subsequently sent a complaint regarding her termination to the EEOC. Id. Ex. A, ¶ 14. On October 22, 2007, over a year after the termination of her appointment, plaintiff sent a letter to Dr. Steven Fluharty, the Vice Provost for Research at the University of Pennsylvania to complain about the circumstances of her termination. Id. Ex. 3. In the letter, plaintiff asserted that her EEOC charge of discrimination was "only [the] consequence of a research integrity

---

[2] The letter informing Plaintiff of her termination references the Policy of Postdoctoral Fellows at the University of Pennsylvania and provided a website link to that Policy rather than the appropriately applicable Policy for Postdoctoral Trainees. Id., Ex. 1 to Ex. C. The relevant provisions of the two policies are effectively the same. Compare id., Ex. A with Ex. 2 and id., Ex. B. to Ex. 2.

-4-

problem in Dr. Kashina's lab." Id. On October 25, 2007, plaintiff sent a letter to Pierce E. Buller, Associate General Counsel for Penn, in which she reiterated that her EEOC charge of discrimination was "only [the] consequence of a research integrity problem in Dr. Kashina's lab." Id. Ex. 4. In both letters, she claimed that she had reported the incorrect work of a lab technician to Dr. Kashina and that Dr. Kashina had declined to act on her report. Id. Exs. 3, 4. She asserted that she was terminated in retaliation for her complaints about the lab technician. Id. She did not include any allegation that the termination of her appointment was in any way related to her national origin. Id.

Plaintiff initially refused defendant's requests that she appear for her deposition in this action. On September 28, 2010, I granted defendant's motion to compel plaintiff's appearance and she was deposed on October 26, 2010. During her deposition, she was asked why she had instituted an action against defendant. Plaintiff responded only "I believe I did it because I lost my job with the University of Pennsylvania." Id. Ex. 4 at 21:12-17. Counsel for defendant asked, "You feel you were wrongfully terminated by the University of Pennsylvania; is that correct?" Id. Ex. 4 at at 21:24-22:2. Plaintiff responded "I never said that. . . . I said the cause [sic] because suddenly university arrived on a decision to terminate my work." Id. Ex. 4 at 22:3-9. When asked what facts would support her claim that she had been subjected to a hostile work environment on the basis of her national origin, plaintiff responded that "[r]ight now, I cannot say the facts because I don't have many documents. . . . If the defendant presently has got the facts that could refresh my memory, he's more than welcome to introduce them to me." Id. Ex. 4 at 61:25-62-23. When asked why she felt she was discriminated against, plaintiff responded with an objection that she did not understand the question. Id. Ex. 4 at 66:5-9. When asked why she

"believ[ed] [she] was a victim of national origin discrimination," plaintiff responded again with an objection that she did not understand the question. Id. Ex. 4 at 72:3-12. Referring to her complaint, she further responded, "[i]n this document I listed the reasons why I consider [sic]. That's why I've sent my Complaint to the court." Id. Ex. 4 at 72:23-25. Plaintiff provided no facts to support her claims during her deposition.[3]

## II. Procedural History

On January 14, 2011, defendant filed its motion for summary judgment. Pursuant to my Order of January 21, 2011 plaintiff was to respond to defendant's motion by February 14, 2011. Plaintiff did not file a timely response. Instead, on March 1, 2011 she filed a "Motion to Strike Verified Statement of Dr. Anna Kashina and Motion for More Definite Statement." Plaintiff argued that the statement should be excluded because defendant failed to timely serve her with initial disclosures identifying Dr. Kashina. On March 24, 2011, I denied plaintiff's motion to strike, finding that defendant's failure to timely serve plaintiff with initial disclosures identifying Dr. Kashina was harmless. I also noted that the argument contained in plaintiff's motion to strike was not sufficient to warrant denial of defendant's motion for summary judgment. Plaintiff's only response to Dr. Kashina's verified statement, contained in her motion to strike, consists only

---

[3] Following her deposition, plaintiff filed a motion seeking sanctions against defendant and seeking to have Veritext Corporate Services, a company retained by defendant to record her deposition, ordered to provide her with an audio recording of her deposition together with her deposition transcript. Plaintiff admitted that she had not reviewed the stenographic transcript of her deposition. Because she could not establish a reason to distrust the accuracy of the transcript, I denied her motion on January 21, 2011.

On March 21, 2011, after reviewing only the excerpts from her deposition submitted by defendant as Exhibit 5 to the instant motion for summary judgment, plaintiff filed a "Renewed Motion for Sanction" in which she reasserted her claim that defendant should be sanctioned and that Veritext should be required to provide her with an audio recording of her transcript. I denied plaintiff's motion.

of her own unsupported assertions, speculation and conclusory allegations. I informed plaintiff that unless she filed a response to defendant's pending motion for summary judgment by April 18, 2011, I would consider and decide the motion for summary judgment without the benefit of a response.

On April 18, plaintiff filed a request seeking an extension of time by which to respond to defendant's motion for summary judgment. I denied her request for additional time, finding that plaintiff had ample time to prepare and file a response to defendant's motion. I again informed plaintiff that unless she filed a prompt response to defendant's motion for summary judgment, I would consider and decide defendant's motion without the benefit of her response. To date, plaintiff has not filed an opposition to defendant's motion.

## STANDARD OF REVIEW

"A party may move for summary judgment <u>at any time</u> until 30 days after the close of discovery." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). "A party opposing the motion must file a response within 21 days after the motion is served or a responsive pleading is due, whichever is later." Fed. R. Civ. P. 56(c)(1)(B). A "district court retains the authority to decide whether a motion is ripe for consideration and determine whether or not to delay action on a motion for summary judgment." St. Surin v. Virgin Islands Daily News, 21 F.3d 1309, 1313 (3d Cir. 1994). "[T]o properly postpone summary judgment pursuant to Rule 56(f), a party must submit an affidavit setting forth, with specificity, the reasons for their inability to defend summary judgment." Horn v. Kline, No. 06-1038, 2008 WL 2622911, at *3 (M.D. Pa. June 30, 2008). "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protection of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess

the merit of a party's opposition." Radich v. Goode, 886 F.2d 1391, 1394 (3d Cir. 1989) (citation omitted).[4]

The party moving for summary judgment has the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 255. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[4] Although plaintiff has argued that defendant's motion for summary judgment is "premature," see Docket No. 66, at ¶ 1, she did not file a Rule 56(f) affidavit in response to defendant's motion for summary judgment. See Boandl v. Geithner, --- F.Supp.2d ----, No. 09-4799, 2010 WL 4321573, at * 6 (E.D. Pa., Nov. 02, 2010) (finding summary judgment motion was not premature where plaintiff had not filed a Rule 56(f) affidavit). Further, she "has not sufficiently specified what facts, if uncovered, would preclude summary judgment." Poles v. Saint Joseph's Univ., No 92-6797, 1995 WL 542246, at *4 (E.D. Pa. Sept. 11, 1995); see also Bates v. Tandy Corp., 186 F. App'x 288, 291 (3d Cir. 2006) ("our Court generally denies relief under Rule 56(f) if the purported inadequacy of the record is attributable to the movant's own failure to take advantage of the discovery period, rather than the other party's lack of cooperation").

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S., at 322.

Pursuant to Federal Rule of Civil Procedure 56(e)(2), when a party fails to respond to a summary judgment motion, the Court may grant the moving party's motion "if appropriate." Fed. R. Civ. P. 56(e). The Court of Appeals for the Third Circuit has held that a court may "appropriately" grant an unopposed motion for summary judgment as follows:

> [w]here the moving party has the burden of proof on the relevant issues, . . . the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law. Where the moving party does not have the burden of proof on the relevant issues, . . . the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law."

Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

## DISCUSSION

**I.      Section 1983**

In order to bring suit under section 1983, plaintiff must allege that a person acting under

color of state law deprived her of her constitutional rights. See Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993) (listing the elements of a section 1983 claim). The University of Pennsylvania is a private institution whose actions are "not fairly attributable to the state" and cannot be sued under section 1983. Pik v. Univ. of Pa., No. 08-5164, 2010 WL 3933275, at *7 (E.D. Pa. Oct. 7, 2010) (citation omitted) ("Penn is not a state actor for purposes of the plaintiff's § 1983 claims"). Defendant is entitled to summary judgment as to plaintiff's claims pursuant to section 1983.

## II.    Section 1981

Plaintiff's section 1981 claim of discrimination, which is based solely on her national origin, cannot withstand defendant's motion for summary judgment. District courts in this Circuit have held that "section 1981 claims based on national origin plus ethnicity or ancestry or race are cognizable, whereas claims based on national origin alone or national origin plus other unprotected categories are not." Mulholland v. Classic Mgmt. Inc., No. 09-2525, 2010 WL 2470834, at * 3 (E.D. Pa. June 14, 2010); see also Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics."); Bennun v. Rutgers State Univ., 941 F.2d 154, 172 (3d Cir. 1991) (suggesting that a claim that "rest[s] solely on [the plaintiff's] national origin . . . would not be sufficient for a § 1981 claim").

Beyond her allegations that she is "a citizen of the Russian Federation," compl. ¶¶ 1, 7, 15, Plaintiff has not set forth any evidence to establish that her claim is based on her ethnic characteristics or ancestry. Absent evidence to suggest that plaintiff's section 1981 claim rests

on something other than her national origin, defendant is entitled to judgment in its favor with respect to plaintiff's claim under section 1981.[5] See Lasuchin v. Perrin, No. 86-7359, at *7, 1988 WL 95079, at *7 (E.D. Pa. Sept. 13, 1988) (finding plaintiff's "statement that he was discriminated against on the basis of his Russian ancestry [was] insufficient to invoke the protections of § 1981").

## III.    Title VII

Under Title VII it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (2007). Under the framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a plaintiff asserting claims of discrimination and retaliation under Title VII must first establish her prima facie case. Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005). If plaintiff establishes her prima facie case, the burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment decision. Fasold, 409 F.3d at 184. If the employer meets its burden, the plaintiff then must offer evidence "that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." Id.; see also Bhagat v. Hettche, 137 F. App'x 507, 508 (3d Cir. 2005) ("National origin

---

[5]    The prima facie elements to establish liability are the same under Title VII and section 1981. Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009) ("the substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII"). Accordingly, even if plaintiff's allegation of discrimination based solely on her national origin were sufficient to establish that she is a member of a protected class under section 1981, her claim would fail for the reasons set forth below.

discrimination claims are analyzed under the framework set forth in McDonnell Douglas . . .").
"[T]hroughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.1994).

"Some courts apply the McDonnell Douglas framework to hostile work environment claims while others do not." Brown-Baumbach v. B & B Automotive, Inc., No 09-3962, 2010 WL 2710543, at *7 (E.D. Pa. Jul. 7, 2010), citing Brillhart v. Sharp, No. 07-1121, 2008 WL 2857713 at *33-41 (M.D. Pa. Jul. 21, 2008) (collecting cases supporting each approach), see also Abramson v. William Patterson Coll., 260 F.3d 265, 281 n.11 (3d Cir. 2001) (suggesting that a plaintiff may establish a hostile work environment claim by establishing only the elements in the test set forth below).

### A. Hostile Work Environment

In her complaint, plaintiff alleges that she "was subjected to a work environment wrought with maliciousness, willful and wanton misconduct, all in reckless disregard of her civil rights, to wit, discrimination on the basis of national origin." Compl. ¶ 15. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment," a hostile work environment exists and Title VII has been violated. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation and citation omitted). Accordingly, in order to establish a prima facie hostile work environment claim, plaintiff must demonstrate that: (1) she suffered intentional discrimination

because of her national origin; (2) the discrimination was severe or pervasive;[6] (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same gender in that position; and (5) the existence of respondeat superior liability. See Abramson, 260 F.3d at 276-77. "In determining whether the conduct is sufficiently severe or pervasive to implicate Title VII, district courts must consider the totality of the circumstances. See Carver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005), citing Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990). Such considerations "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Carver, at 263, citing Harris, 510 U.S. at 23.

I find that Plaintiff has not shown that she suffered from the requisite severe or pervasive discriminatory conduct. On the record before me, any actions taken against plaintiff by defendant were based on her failure to follow the Policy. She has not produced any evidence beyond the bare allegations in her complaint to substantiate a claim that she was subjected to a hostile work environment on the basis of her national origin. The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams, 891 F.2d at 460. Defendant is entitled to summary judgment as to plaintiff's hostile work environment claim. See Krizman v. AAA Mid-Atl., Inc., No. 06-402,

---

[6] Until 2006, the Court of Appeals required that discrimination be "pervasive and regular." See, e.g., Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001). In 2006, however, the Court of Appeals altered its formulation of the standard to conform to Supreme Court precedent, requiring that discrimination be "severe or persuasive." See Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006), citing Pa. State Police v. Suders, 542 U.S. 129, 133 (2004).

2006 WL 2945230, at *6-8 (E.D. Pa. Oct. 12, 2006) (granting summary judgment to defendant employer as to plaintiff's hostile work environment claim where actions taken by employer were motivated by plaintiff's failure to "perform her duties in accordance with the standards" rather than her national origin).

> B. **Discrimination**

To establish a prima facie case of discrimination based on her national origin under Title VII, plaintiff must demonstrate that "(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) this occurred under circumstances that raise an inference of discriminatory action, such as when a similarly situated person not of the protected class is treated more favorably." Fahnbulleh v. Carelink Cmty. Support Servs., Inc., No. 08-5055, 2009 WL 4591712, at *7 (E.D. Pa. Dec. 04, 2009), citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003). Although plaintiff need not show a "precise kind of disparate treatment" by comparing herself to a similarly situated individual from outside her protected class, plaintiff "must establish some causal nexus between [her] membership in a protected class" and the adverse employment decision of which she complained. Sarullo, 352 F.3d at 798.

Plaintiff has not produced evidence of circumstances that would raise an inference of discriminatory action such that her claim can withstand defendant's motion for summary judgment. She has not shown that any non-Russian appointees to Dr. Kashina's laboratory were treated more favorably than she was in similar circumstances (e.g., when they failed to follow the Policy). See Killen v. Nw. Human Servs., No. 06-4100, 2007 WL 2684541, at *5 (E.D. Pa. Sept. 7, 2007) (plaintiff failed to make out prima facie case of wrongful termination where she could

not show that similarly situated employees were not terminated). She has not offered any evidence that her termination was due to anti-Russian sentiment held by Dr. Kashina or others at the University. See Anthony v. Duff & Phelps Corp., No. 09-3918, 2010 WL 3222188, at *5 (E.D. Pa. Aug. 12, 2010) (finding plaintiff failed to establish her prima facie case where she had "not offered an actual instance where [defendants] expressed anti-Russian sentiment or treated her less favorably than [her proffered comparator] or other employees"). Viewing the record before me in the light most favorable to plaintiff, there is no evidence of a link between her termination and her national origin. Therefore, defendant is entitled to judgment in its favor as to plaintiff's claim for national origin discrimination.

### C. Retaliation

Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 56 (2006), quoting 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, plaintiff must show: "'(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" Flory v. Pinnacle Health Hosp., 346 F. App'x 872, 877-78 (3d Cir. 2009), quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002). "The first prong of a Title VII retaliation claim requires, at minimum, an informal protest of discriminatory employment practices. . . . . The plaintiff must oppose a practice made unlawful under the applicable statute." Ladd v. The Boeing Co., No. 06-28, 2008 WL 375725, at *12 (E.D. Pa. Feb.

08, 2008) (citation omitted).

Other than the allegation in her complaint that "[a]fter termination of employment Plaintiff was subject for retaliation," Def's Mot. Ex. 1 at ¶ 18, plaintiff has provided no information in support of her claim for retaliation. She makes no allegation that she engaged in protected conduct prior to her termination.[7] Her "silence leaves us with the complaint. Even for a pro se plaintiff this is not sufficient either to shift the burden to the defense or create any dispute of material fact." Clarke v. The Kintock Grp., No 04-5763, 2006 WL 851197, at *2 (E.D. Pa. Mar. 29, 2006).

### D. Legitimate Non-Discriminatory Reason and Pretext

Even if I could find on the basis of the evidence now before me that plaintiff could establish a prima facie case that she has been discriminated against because of her national origin, she has not set forth any evidence to rebut defendant's legitimate non-discriminatory reason for her termination. Defendant has produced evidence that plaintiff was terminated due to her failure to follow laboratory policy by failing to place her constructs in the common lab box, destroying a construct, and providing Dr. Kashina with a construct that was actually water. Defendant's explanation for plaintiff's termination is "legally sufficient to justify a judgment for the defendant" under McDonnell Douglas and shift the burden back to plaintiff to produce

---

[7] In her letters to Fluharty and Buller, plaintiff claimed that prior to her termination she had reported the incorrect work of a lab technician to Dr. Kashina and that Dr. Kashina had declined to act on plaintiff's report. Def.'s Mot. Exs. 3, 4. Complaining about a laboratory technician's failure to perform her work correctly is not a protected activity under Title VII. Cf. Barber v. CSX Distrib. Servs., 68 F.3d 694, 701 (3d Cir.1995) (holding letter complaining about unfair treatment but not specifically complaining about age discrimination did not constitute protected activity); Clark v. PNC Fin. Servs. Grp., No. 10-00378, 2010 WL 4024715, at * (W.D. Pa. Oct. 13, 2010) (finding that "complaining about unsanitary conditions in the employee cafeteria is not a protected activity under Title VII").

evidence that defendant's proffered explanation was "not the true reason" it fired her. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248,255-56 (1981); Fuentes, 32 F.3d at 763 (an employer satisfies its "relatively light burden" by "introducing evidence which taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.").

In order to show that defendant's legitimate non-discriminatory reason for her termination was pretext, plaintiff must "'present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision.'" Akarimali v. Nw. Human Servs., No. 05-1009, 2007 WL 136322, at *5 (E.D. Pa., Jan. 11, 2007), quoting Kautz v. Metz-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005). The "court is not obliged to scour the record to find evidence that will support [plaintiff's] claims." Perkins v. City of Elizabeth, No. 10-1339, 2011 WL 477671, at *1 (3d Cir. Feb. 11, 2011). Plaintiff has not produced any evidence to cast doubt on defendant's assertion that she was terminated for her failure to place her constructs in the common lab box, her destruction of a construct and her failure to follow the Policy. Cf. Ackah v. Commonw. of Pa. Dep't of Corr., No. 08-00376, 2009 WL 2951986, at *5 (M.D. Pa., Sep. 14, 2009) (granting defendant's motion for summary judgment where plaintiff "failed to point to any evidence from which a factfinder either could reasonably disbelieve that the adverse employment actions were because of [his] performance or could believe that discrimination against [plaintiff] based on his race or national origin was likely the determinative cause of the actions"). "Because she has not produced any evidence, [s]he cannot maintain that the defendant's explanation was actually a pretext for discrimination" and summary judgment is appropriate on plaintiff's Title VII claims. Clarke, 2006 WL 851197, at *2.

**IV. Conclusion**

For the reasons stated above, I will grant defendant's motion for summary judgment. An appropriate Order follows.